## TALLEY v. STATE.

## Opinion delivered November 15, 1915.

1. DEPOSITARY BANK—BOND—DESIGNATION OF COUNTY DEPOSITARY.—A bank and its sureties are estopped to deny that there had ever been a designation of the said bank by the county court, as a county depositary, when the bank had filed its bond under Act 113, page 302, Acts 1905, and the county court had entered an order approving the bond, which recites that the bank had been duly designated by the county court as such county depositary.

2. DEPOSITARY BANK—PUBLIC FUNDS—DEMAND FOR PAYMENT.—A demand for payment of public funds, which had been deposited in a county depositary bank, is unnecessary, in order to hold the sureties on the bond of the bank, where the bank had become insolvent, and a demand upon it would have served no useful purpose.

3. DEPOSITARY BANKS—PUBLIC FUNDS—WARRANTS—SET-OFF.—The obligation of a bank, as the depositary of county funds, and the sureties on its bond, is to pay over the money deposited on demand, and a failure to pay over the money can not be justified, pro tanto, by a showing that the depositary was the owner at the time of certain county warrants.

4. DEPOSITARY BANKS—PUBLIC FUNDS—SURRENDER OF ASSETS.—A bank which held county funds on deposit as a county depositary closed its doors and was placed in the hands of the State Bank Commissioner at 1 o'clock P. M. on a certain day. At 2 o'clock P. M. the same day an officer of the bank undertook to deliver certain assets of the bank to the county treasurer. Held, the treasurer would be required to return the same, as the title to the assets had passed to the bank commissioner before the same were delivered to the treasurer.

5. DEPOSITARY BANKS—COUNTY FUNDS—PREFERENTIAL RIGHT OF COUNTY.—A county has no preferential right to the assets of a county depositary bank, by reason of the fact that its funds had been deposited there.

6. DEPOSITARY BANKS—FAILURE TO PAY OVER COUNTY FUNDS—ACTIONS AGAINST STOCKHOLDERS AND BONDSMEN—CONSOLIDATION.—Where a depositary bank failed and was unable to pay over to the county treasurer public funds deposited therein, and separate actions were commenced under the statute against the stockholders of the bank, and its bondsmen, the trial court will not be held to have abused its discretion in refusing to order a consolidation of the two actions, and transferring the cause, as consolidated, to equity.

7. DEPOSITARY BANKS—FAILURE—RIGHT OF BONDSMEN TO SUBROGATION.—The bondsmen of a defunct depositary bank, not having discharged their liability to the county, can not claim a right of subrogation, under the statute, as against the stockholders.

8. DEPOSITARY BANKS—FAILURE—LIABILITY OF BONDSMEN FOR INTEREST.—
The liability of the sureties on the bond of a defunct depositary
bank, includes interest on the amount which was due the county.

Appeal from Benton Circuit Court; *J. S. Maples,*
Judge; affirmed.

*Dick Rice,* for appellants.

1. Appellants were entitled to offset the amount
of the warrants held by the bank against any judgment
rendered. Kirby's Digest, § 6098; 32 Cyc. 231-2; 46 N.
W. 210; 44 Minn. 61; 20 Am. St. Rep. 543; 25 Am. & Eng.
Enc. Law (2 ed.) 540; 59 N. Y. 533; 24 N. W. 602; 44
Pac. 362; 53 Pac. 187. The warrants were valid and both
principal and sureties were being sued and the right of
offset is clear. 39 Neb. 364; 23 L. R. A. 67; 9 Okla. 626;
60 Pac. 226; 52 Ark. 502; 81 Ky. 573; 98 Ark. 125.

2. No interest should have been allowed from the
time the bank went into a receiver's hands. 34 Cyc. 372;
135 S. W. 1135; 141 *Id.* 515; 92 N. E. 134; 37 L. Ed. U. S.
663; 83 S. W. 871; 2 Rich. Eq. 63; 32 Cyc. 152.

3. Credit should have been allowed for the $20,027.22
paid to the county by the bank. 67 Ark. 11; 32 *Id.* 45;
38 *Id.* 601; 66 *Id.* 48; 57 *Id.* 474; 20 Wall. 263; 87 Ark.
400; 143 S. W. 895. The bank had the right to prefer
the county in paying its debts. 113 S. W. 408; 18 Ga. 65;
26 Am. Dec. 570; 34 Am. Rep. 286; 33 Ark. 501; 42 *Id.* 54;
68 *Id.* 11; 34 Am. Rep. 286.

4. The bank commissioner had no title to the funds.
The insolvent laws of a state have no extra territorial
effect, nor affect property outside the State. 43 L. Ed.
(U. S.) 837; 96 N. Y. 252-4; 75 Ark. 355; 71 Wis. 356.

5. No demand was made for the funds, as required
by law. 100 S. W. 27; 122 Pac. 146; Acts of 1905, p. 302.

6. It was error to refuse to consolidate the two
causes and transfer to equity. Acts 1905, p. 303; 97
Ark. 347; 114 Ark. 344; 5 Cyc. 448; 1 N. Y. 47, 76; 10 *Id.*
559; 16 N. E. 904; 80 Am. Dec. 797; 95 Fed. 634; 30 Cyc.
552; 32 Cyc. 244; 57 Ark. 541; 131 S. W. 672; 4 Pom. Eq.
Jur. (3 ed.) 417; 37 Am. Dec. 582; 60 Am. St. Rep. 135;

68 Ark. 71; 53 *Id.* 303. An equitable defense was stated in the answer.

*Rice & Dickson,* for appellee.

1. As to the $3,010.00 county warrants, they have been accepted and credited on the judgment. The others are warrants on the "bridge fund," or bridge scrip and no offset was allowable against money deposited. Kirby's Dig., § § 6891, 6892. The warrants were the property of the bank commissioner to be presented for redemption according to law.

2. Appellee had the right to sue the sureties alone or jointly with the principal. Kirby's Dig., § § 609, 610; 120 Pac. 325; 13 Cyc. 816; 77 N. W. 815; 62 N. Y. 88.

3. The motion to consolidate and transfer to equity was properly refused. Kirby's Digest § § 6083-4; Act No. 339, 1905; 83 Ark. 290.

4. No credit should have been allowed for the $20,027.22. The title to these assets had passed to the bank commissioner. 5 L. R. A. (N. S.) 886 and notes; 16 *Id.* 918; 86 Ark. 486; 99 Fed. 900; Acts 1905, 304; 113 S. W. 397.

5. Interest was properly allowed. 123 N. W. 782; 22 Am. & Eng. Ann. Cases, 1220.

6. Demand was made, but if not, the bank had put it out its power to fulfill its obligation by its insolvency. 13 Cyc. 819, note 25.

7. No equitable defense was presented. 13 Cyc. 820, 816.

McCULLOCH, C. J. The Bank of Rogers, a domestic corporation doing business at Rogers, Benton County, Arkansas, received on deposit the funds of said county, including school district funds, as depositary of the county, pursuant to the terms of a special statute enacted in the year 1905, authorizing the county court of that and certain other counties to select a depositary, and said bank executed as such depositary a bond with appellant Talley and others as sureties thereon, as provided by said statute. The Bank of Rogers failed and ceased to do business on July 16, 1914, having on deposit at that

time the following funds held as such public depositary, towit:

School district funds................$39,344.78
County road funds..................   5,896.06
County bridge funds ...............    100.00
County general funds...............  4,478.84
                                    _____
            Total..................$49,819.68

The State Bank Commissioner took charge of the assets and affairs of the defunct bank on the day of the failure, and subsequently a demand was made on him as the representative of the bank to pay over the funds to the county treasurer. This action at law was then instituted in the name of the State of Arkansas, for the use of Benton County and the school districts whose funds were held by the bank on deposit, against the sureties on the bond to recover said amount so held. The defendants answered separately, and a trial of the cause resulted in a judgment against all of the defendants for recovery of the full amount named.

(1) It is not denied that the bond sued on was duly executed by all of the defendants and approved by the county court, nor that the public funds to the amount named were received on deposit by the bank as alleged; but it is contended that no order was formally made by the county court designating the Bank of Rogers as county depositary. The governing statute provides that "upon the approval of said bond the county court shall make an order designating the successful bidder as the depositary of all the funds of said county for a period ending thirty days after the time fixed for another selection of a county depositary, and it shall be the duty of the county treasurer immediately to transfer to said depositary all funds belonging to the county." Section 6, Act 113, Acts of 1905, p. 302. No order of the county court is shown formally designating the Bank of Rogers as depositary, but there was an order approving the bond which recites the fact that the bank had been duly designated by the county court as such county depositary, and the funds

of the county were paid over to the bank. The bank and its sureties are estopped to deny that there had never been a designation of the bank as such depositary. *Hennepin County* v. *State Bank,* 64 Minn. 180, 66 N. W. 143.

(2) It is also contended that the right of action against the sureties on the bond was not complete because no demand had been made on the principal. There was a demand made on the bank commissioner, who was the legal representative of the insolvent bank; and even if that was not sufficient, no demand was necessary, since the bank had ceased to do business and put itself out of power to perform the terms of the bond by becoming insolvent and going into the hands of the State Bank Commissioner. *St. Louis County* v. *American L. & T. Co.,* 75 Minn. 489, 78 N. W. 113. A demand would have been a vain thing when there was no possibility of compliance therewith.

The right of set-off was asserted to the extent of the sum of $7,936.47 on account of warrants of the county held by the bank. It appears from the evidence that the Bank of Rogers had purchased warrants on the bridge fund of the county aggregating the sum of $4,926.00, which said warrants were held by the bank at the time of its failure. The bank also held warrants in the sum of $3,010.00 on the general revenue fund of the county at the time of the failure. In other words, the bank was the owner of warrants of the kind mentioned, and the sureties on the bond claimed the right of set-off to the extent of those warrants. So far as concerns the warrants on the county general fund, it is conceded in the brief of plaintiff's counsel that since the judgment was rendered those warrants have been turned over to the treasurer and credited on the judgment, so the judgment will be modified to that extent, and that eliminates the question of those warrants from the controversy.

(3) The bank held the bridge warrants the same as if they had been in the hands of any other holder who merely had the right to present them to the county treasurer and receive payment out of funds appropriated for

that purpose. It appears from the evidence that the depositary had only $100.00 of that fund, which was insufficient to meet the warrants, or, so far as the evidence discloses, either one of them. There was, at any rate, no right of set-off, for even if there had been funds in the county treasury to meet the warrants, the only right the bank had, as the holder of the warrants, was to present them to the treasurer for payment in the same manner that any other holder of warrants could have done. The obligation of the bank, as the depositary of public funds, and the sureties on its bond was to pay the money over on demand, and a failure to pay over the money cannot be justified *pro tanto* by showing that the depositary was the owner at the time of county warrants.

(4)   Defendants claim that there was a payment made in the sum of $20,027.22 to which they are entitled as a credit on the amount of public funds held by the depositary. The facts disclosed by the evidence are that the bank closed its doors at one o'clock P. M. on July 16, 1914, and caused a notice to be posted on the doors, in compliance with the statutes, that "this bank is in the hands of the bank commissioner." About two o'clock P. M. on that day J. E. Felker sought the county treasurer at his office in Bentonville and delivered to him the county scrip hereinbefore mentioned and drafts drawn by the bank of Rogers against certain other banks aggregating the sum of $20,027.22. One of these drafts was drawn on a bank in St. Louis, in the sum of $1,000.00, and was subsequently collected by the treasurer.

After the State Bank Commissioner took charge of the bank, through one of his deputies, he instituted a suit in the chancery court of Benton County against the treasurer to compel the latter to surrender to the bank commissioner said assets of the bank alleged to have been wrongfully delivered to him by Felker. The chancery court rendered a final decree in accordance with the prayer of the complaint, and the treasurer complied with it by surrendering to the bank commissioner all of said assets. It is insisted now that the delivery of those as-

sets constituted a payment to the treasurer to which the county was bound and which entitled the defendants in this action to a credit on the amount of their liability on the bond. In other words, they claim that it constituted a payment which inured to the benefit of the sureties on the bond. We are of the opinion that the delivery of those assets cannot be treated as a payment. The chancery court, by its final decree, directed the treasurer to surrender the assets to the bank commissioner, and correctly so. The title to the assets had passed to the bank commissioner before the same were delivered to the treasurer.

Section 46 of Act 113, Acts of 1913, creating the State Banking Department, provides that any bank may place its affairs and assets under the control of the bank commissioner by posting a notice on its front door as follows: "This bank is in the hands of the bank commissioner," and that "the posting of such notice, or the taking possession of any bank by the bank commissioner shall be sufficient to place all of the assets and property, of whatever nature, in possession of the commissioner and shall operate as a bar to any dissolution of any attachment proceedings." It does not appear, in the first place, that Felker had any authority to take the assets of the bank and deliver them to any particular creditor; but even if there had been any attempt on the part of the bank to confer any such authority, it had no right to do so after it had placed itself in the hands of the State Bank Commissioner, to whom the title and right of control of the assets had passed.

(5) It is contended that the county had a preferential right to the assets of the bank by reason of the fact that its funds had been deposited there. This contention is unsound, because no such right is conferred by the statute which authorizes the deposit. The statute only gives the county two rights in addition to that of other depositors; it makes the stockholders of the bank liable for the amount of the deposit, and also provides that a bond shall be executed by the bank, conditioned that the funds shall be paid over on demand. In other re-

spects the county stands as any other depositor, for the funds constitutes a general deposit. *Hill* v. *Miles*, 83 Ark. 486. Not only is it so that no lien is created on the assets of the bank constituting a county depositary, nor preference over other creditors given to the county, but the general statutes of the State concerning insolvent corporations positively forbid the preferences by such corporations. Kirby's Digest, Sec. 949. It is argued that that statute has no application to the county, upon the general principle that the State, as the sovereign, is exempted from the operation of statutes which do not apply in terms or by necessary implication to the State. If the funds had been wrongfully placed in the bank, that principle might apply, but when the funds were rightfully deposited, pursuant to a statute expressly authorizing it, and the statute itself confers no lien on the assets of the bank, but gives the county other remedies, there is no reason for applying the principle that would exempt the county from the operation of the statute forbidding the preferences on the part of an insolvent corporation. We are of the opinion, therefore, that the delivery of part of the assets of the bank by Felker to the county treasurer did not constitute a valid payment, and that the defendants, as sureties on the bond, are not entitled to a credit therefor.

(6) Again it is insisted that the court erred in refusing to consolidate this case with another action instituted by the county treasurer against the stockholders of the bank to recover on account of their statutory liability, and to transfer the two causes to the chancery court. The contention is that the defendants had the right of subrogation against the stockholders, that there should have been a transfer to equity, the amount ascertained, and the right of equitable subrogation declared. The two suits were not necessarily similar so as to call for a consolidation within the meaning of the statutes of this State which authorize trial courts to consolidate causes of similar nature. The county had two separate and distinct remedies, as before stated, one against the

stockholders and the other against the sureties on the bond. The defenses to the two actions might be altogether different, and, as pointed out in this case, were different in that many of the defendants in the suit against the stockholders defended on the ground that they were not holders of the stock. The liability of the two classes of defendants was of entirely different nature, and it cannot be said that the issues were so nearly alike that it was the duty of the court to consolidate them. At least, we cannot say that the court abused its discretion in refusing to consolidate them.

(7) Without determining whether the defendants, as sureties on the bond, have any right of subrogation against the stockholders, it is sufficient to say that these defendants have not put themselves in the proper attitude to ask a court of equity to declare the right of subrogation or to delay this litigation in order to give the defendants an opportunity to assert rights against the stockholders. *Jones* v. *Harris,* 90 Ark. 51. The defendants have not discharged their liability by payment of the sum due to the county, and are therefore not in a position to assert the right of subrogation, if it exists at all.

(8) The only remaining contention is that the court erred in adjudging the payment of interest from the time of the bank failure up to the time of judgment. The rule is invoked that interest does not run on a liability against an insolvent corporation while in the hands of a receiver, and that the sureties are not liable to any greater extent than the principal would be liable. The purposes of the statute authorizing the deposit of public funds is to give the county a speedy and efficacious remedy for the recovery of the deposit, regardless of the financial condition of the depositary. The right of action against the sureties became complete when demand was made for the payment of the funds, or what was equivalent thereto, the failure of the bank. Therefore the liability of the sureties included interest on the amount which was due. Any other rule would allow the sureties to take advantage of the wrong of the principal by postponing the turning

over the public funds. *State of Arkansas, ex rel Independence County* v. *Citizens Bank & Trust Co.*, 119 Ark. 617.

We find no error, therefore, in the proceedings, and the judgment, after being modified so as to allow the credit of $3,010.00 paid by delivery of warrants on the county general fund, is affirmed.