### STATE BANKING BOARD et al. v. PILCHER. (No. 9010.)*

(Court of Civil Appeals of Texas. Dallas. Nov. 17, 1923. On Appellants' Motion for Additional Findings of Fact, Dec. 15, 1923.)

**1. Banks and banking ⬤�ção15—Action on claim against insolvent bank may be brought in county where bank domiciled.**

Action on claim against insolvent bank rejected by commissioner of banking may be brought in district court of the county in which the bank was located, and need not be brought in the Supreme Court because the commissioner is an officer of the executive department.

**2. Banks and banking ⬤⟷15—Action on claim against insolvent bank properly brought in county in which bank located.**

An action against insolvent bank, commissioner of insurance and banking, Attorney General, and state treasurer, composing the state banking board, to establish as a general deposit, secured by and to be paid out of the depositors' guaranty fund, a claim against the bank, was properly brought in the county where the bank was located and plaintiff resided, as against claim by commissioner of banking that it was in effect a mandamus proceeding against an officer of the executive department of the government cognizable only by the district court of Travis county, under Rev. St. art. 1830, subd. 20.

**3. States ⬤⟷191(2)—Action against banking commissioner and others held not suit against state requiring consent.**

An action against insolvent bank, commissioner of insurance and banking, and others, composing state banking board, to establish as a general deposit, secured by and to' be paid out of the depositors' guaranty fund, a claim against the bank, was not in effect a suit against the state requiring allegation of consent of the state to be sued.

**4. Banks and banking ⬤⟷15—Limitations as to filing claims against insolvent bank and suits on rejected claims matters of defense.**

Rev. St. arts. 463–465, providing that holders of preferred claims against insolvent bank must present same within 90 days after the first notice given by the commissioner of insurance and banking, and that suits on rejected claims must be brought within six months after rejection, present questions of limitations which are matters of defense and not necessary to be alleged affirmatively in an action on rejected claim.

**5. Limitation of actions ⬤⟷180(6), 182(5)—Statutes of repose must be urged as matter of defense.**

Statutes of repose, in order to be available, unless otherwise specifically directed by law creating them, must be urged as a matter of defense, either by general demurrer when the limitation appears on the face of the pleadings, or, when not, by appropriate pleas; otherwise the benefits thereof must be considered as having been waived.

**6. Banks and banking ⬤⟷15—Special exceptions held necessary as to failure to make allegations as to filing of claims and bringing suit within time.**

Assuming that Rev. St. arts. 463–465, providing that holders of preferred claims must present same within 90 days after first notice given by commissioner of insurance and banking and that suits on rejected claims must be brought within six months after rejection, require one suing on a rejected claim to allege presentation within 90 days and suit within six months after rejection, failure to so allege must be brought to the attention of the trial court by special exceptions, in view of rule 17 of the rules for district and county courts.

**7. Appeal and error ⬤⟷910—Reasonable presumptions indulged in favor of sufficiency of petition on review of refusal to sustain demurrer.**

Where petition in action against commissioner of insurance and others to establish as a general deposit, secured by and to be paid out of the depositors' guaranty fund, a claim against an insolvent bank did not allege when claim was filed and the suit brought, on review of the refusal of the lower court to sustain a demurrer to the petition because of such omission, it will be presumed that the claim was filed and suit brought within the time required by Rev. St. arts. 463–465.

**8. Pleading ⬤⟷205(2)—Statement of cause of action, amendable, good against general demurrer.**

A defective statement of a cause of action, if amendable, is good against a general demurrer.

**9. Banks and banking ⬤⟷15—Allegation that claim noninterest-bearing, sufficient.**

In an action against insolvent bank, commissioner of insurance and banking, and others, to establish as a general deposit, secured by and to be paid out of the depositors' guaranty fund, a claim against the bank, allegations that plaintiff had on deposit a certain sum and that on and after a certain date no interest was being paid directly or indirectly to plaintiff, etc., held sufficient statement that claim was noninterest-bearing, as against a general demurrer.

**10. Appeal and error ⬤⟷1051(3)—Erroneous admission of evidence held harmless.**

Admission of evidence not the best and in violation of the parol evidence rule was harmless, where appellants by their pleadings admitted in effect the existence of the facts sought to be proved, and other evidence was admitted without objection tending to establish those facts, under rule 62a for the Court of Civil Appeals.

**11. Banks and banking ⬤⟷15—Rule against interest on claim against insolvent corporation held inapplicable.**

In action against insolvent bank, commissioner of insurance and banking, and others, to establish as a general deposit, secured by and to be paid out of the depositors' guaranty fund, a claim against the bank, the rule of law that interest shall not run on a claim against an insolvent corporation was inapplicable, under

⬤⟷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted February 6, 1924.

Rev. St. arts. 463–465, interest being claimed from date of rejection, since the allowance of interest in such case would not have the effect to decrease the general assets of the bank.

**12. Banks and banking ⬤═⫸15—Judgments properly entered against defendants in official property.**

In action against insolvent bank, commissioner of insurance and banking, Attorney General, and state treasurer, to establish as a general deposit, secured by and to be paid out of the depositors' guaranty fund, a claim against the bank, the court did not err in rendering a money judgment against the three last-named defendants in their official capacities as against objection authority of court extended only to establishment of claim and direction of its payment in due course out of the liquidation of the bank.

**13. Banks and banking ⬤═⫸15—Giving general credit to holder of certificate of deposit held not preference.**

Where one holding certificate of deposit, upon hearing that bank was in financial trouble, went to the bank and surrendered his certificate and received credit as general depositor, thus entitling him to the protection of the bank depositors' guaranty fund, the bank then having funds with which the certificate could have been paid, there was no violation of Rev. St. art. 551, either on the ground of there being a preference or the doing of an act with the view to prevent the appropriation of the assets of the bank in the manner prescribed by Rev. St. 1911, arts. 518–574.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Suit by L. P. Pilcher against the First Guaranty State Bank of Collinsville and others, composing State Banking Board. Judgment for plaintiff, and defendants appeal. Affirmed.

W. A. Keeling, Atty. Gen., and Jno. W. Goodwin and Walace Hawkins, Asst. Attys. Gen., for appellants.

Wood & Wood, of Sherman, for appellee.

VAUGHAN, J. This is a suit by L. P. Pilcher against the First Guaranty State Bank of Collinsville, Tex., J. L. Chapman, commissioner of insurance and banking, and W. A. Keeling, Attorney General, C. V. Terrell, state treasurer, composing the state banking board, to establish as a general deposit, secured by and to be paid out of the depositors' guaranty fund, a claim against said First Guaranty State Bank for $6,000. Appellee, plaintiff in the court below, alleged in his petition that the First Guaranty State Bank of Collinsville was a banking corporation, incorporated under the laws of the state of Texas and operating under the depositors' guaranty fund plan; that on December 24, 1921, he deposited in said bank as a general deposit, unsecured and noninterest-bearing, the sum of $6,000; that said bank was closed by the commissioner of insurance and banking December 27, 1921, on account of its insolvency, and is now being liquidated by him; that he (appellee) filed his verified claim with the commissioner of insurance and banking and the state banking board as an unsecured, noninterest-bearing deposit; and that said claim was rejected. Appellee prayed for judgment establishing his claim against said First Guaranty State Bank as an unsecured, noninterest-bearing claim and for a like judgment against the state banking board and the members thereof, only in their official capacity.

The answer of appellant J. L. Chapman to appellee's petition consists of:

First. A general demurrer to the jurisdiction of the court on the ground that this is a mandamus suit against him as an officer of the executive department of the government, and is, therefore, cognizable by the Supreme Court only.

Second. A plea of privilege to be sued in Travis county, Tex., based upon the ground that this is in effect a mandamus proceeding against him as an officer of the executive department of the government, and is, therefore, cognizable by the district court of Travis county.

Third. A demurrer in abatement on the ground that this is a suit against the state of Texas, and no consent of the state to be sued is alleged.

Fourth. A general demurrer.

Fifth. A general denial.

Sixth. A denial that plaintiff is a general depositor of the plaintiff bank.

Seventh. A plea to the effect that plaintiff was owner of an unmatured interest-bearing certificate of deposit theretofore issued to him by the First Guaranty State Bank; that on the 24th day of December, 1921, and prior to the maturity of said certificate of deposit, he surrendered the same to the bank in consideration of its promise to give him credit therefor as a general depositor; that at the time this agreement was made and the certificate of deposit surrendered the First Guaranty State Bank was insolvent and without funds with which to pay plaintiff's claim; and that, therefore, said transaction did not constitute him a general depositor.

Eighth. A plea to the effect that on December 24, 1921, plaintiff was the owner and holder of an unmatured interest-bearing time certificate of deposit theretofore issued to him by the First Guaranty State Bank; that on last-named date he surrendered said certificate in consideration of the promise of said bank that it would give him credit therefor as a general depositor; that at the time said agreement was made the bank was insolvent; and that, therefore, said transaction was a fraudulent attempt to prefer plaintiff's claim and to secure the same by

the depositors' guaranty fund and to prevent the application of the assets of said bank in the manner prescribed by law, and is, therefore, illegal and void.

Appellee, plaintiff in the court below, filed a controverting affidavit to the plea of privilege by defendant Chapman.

The court overruled the plea of privilege of appellant Chapman, his demurrer to the jurisdiction, and his demurrer in abatement, to all of which he duly excepted.

The First Guaranty State Bank answered by general demurrer and general denial. The general demurrer was overruled, to which said appellant bank excepted.

W. A. Keeling, Attorney General, by way of answer suggested to the trial court that the suit, being against the state banking board, and the several members thereof in their respective official capacities, was a suit against the state, and that, no consent of the state to be sued having been alleged, the same is not maintainable. No jury having been demanded, the case was submitted to the trial court, which rendered judgment in favor of appellee against the First Guaranty State Bank for $6,000 with 6 per cent. interest thereon from the 1st day of April, 1922, aggregating the sum of $6,240. Also rendered judgment against J. L. Chapman, commissioner of insurance and banking, and against the members of the banking board in their official capacities for a like sum, directing its payment out of the depositors' guaranty fund; to which judgment appellants duly excepted, and the case is before us on the following assignments of error, upon which appellants rely for a reversal of this cause:

First. The court erred in overruling the demurrer of J. L. Chapman to the jurisdiction of this court, because plaintiff's petition shows on its face to be an action against him (J. L. Chapman) as an officer of the executive department of the government of the state of Texas, to compel the performance of an act or duty which under the laws of the state of Texas he is authorized to perform, and is therefore cognizable by the Supreme Court of Texas only.

Second. The court erred in overruling the plea of privilege of defendant J. L. Chapman, commissioner of insurance and banking, because this suit is against him in his official capacity to procure an order of court compelling him to pass upon and classify the claim of plaintiff, and is, therefore, under Revised Statutes, art. 1830, subd. 20, cognizable by the district court of Travis county only.

Third. The court erred in overruling the demurrer of defendant J. L. Chapman, in abatement of this action, because plaintiff's petition shows on its face to be, in effect, a suit against the state of Texas, and no consent of the state to be sued is alleged.

Fourth. The court erred in overruling the general demurrer of defendant J. L. Chapman to plaintiff's petition because said petition does not allege any facts showing that his claim was presented to the commissioner of insurance and banking within 90 days from the first publication of the notice required to be published under Revised Statutes, art. 463, Complete Statutes of 1920.

Fifth. The court erred in overruling the general demurrer of defendant J. L. Chapman to plaintiff's petition because said petition does not allege any facts showing that this suit was filed within six months after the rejection of his claim by the commissioner of insurance and banking.

Sixth. The court erred in overruling the general demurrer of defendant J. L. Chapman because plaintiff's petition does not allege that this claim is noninterest-bearing.

Seventh. The court erred, as will more fully appear from bill of exception No. 2, in permitting the witness M. E. Gwynn to testify, over the objection of defendants, that such testimony was not the best evidence, as follows:

"I have seen the certificate issued by the commissioner of banking department relative to Collinsville bank as a bank under the guaranty fund. I mailed that certificate to Austin shortly after I took charge of the bank, and as far as I know it is in the hands of the banking department; it shows that the First Guaranty State Bank of Collinsville was secured under the guaranty fund."

Eighth. The court erred in permitting the witness Gwynn, over the objection of defendants that the testimony offered is verbal testimony as to the contents of a written instrument, to testify as follows:

"I have seen the certificate issued by the banking department as a guaranty fund state bank under the guaranty fund. I mailed this certificate to Austin shortly after I took charge of the bank, and as far as I know it is now in the hands of the said, department. It shows that the First Guaranty State Bank of Collinsville was secured under the guaranty fund."

Ninth. The court erred in rendering judgment for 6 per cent. interest on plaintiff's claim from April 1, 1922, to the date of judgment, because the evidence shows that the First Guaranty State Bank of Collinsville was closed December 27, 1921, and that it was then and is now insolvent.

Tenth. The court erred in rendering a moneyed judgment against J. L. Chapman in his official capacity, and against W. A. Keeling, Attorney General, J. L. Chapman, commissioner of insurance and banking, and C. V. Terrell, state treasurer, in their official capacities.

Eleventh. The court erred in rendering judgment against defendants Chapman, Keeling, and Terrell, in their respective official capacities, directing and commanding

them to pay plaintiff's claim out of the depositors' guaranty fund, the extent of the authority of the court in such matters being to establish the claim as secured by the depositors' guaranty fund and to direct its payment in due course of the liquidation of the said bank.

Twelfth. The court erred in rendering judgment in favor of plaintiff establishing his claim as a general deposit secured by the depositors' guaranty fund, because the uncontradicted evidence shows that at the time plaintiff surrendered his unmatured interest-bearing time certificate of deposit in consideration of the promise of the bank to give him credit therefor on its books as a general deposit said bank was insolvent, and that plaintiff knew that it was in financial trouble, and surrendered his claim for a credit as general deposit in order to secure the same by the depositors' guaranty fund.

Thirteenth. The court erred in rendering judgment establishing plaintiff's claim as a general deposit secured by the depositors' guaranty fund, because said judgment is contrary to the evidence in this: The uncontroverted evidence shows that at the time plaintiff surrendered his interest-bearing certificate of deposit in consideration of the promise of the bank to give him credit therefor on its books as a general deposit, said bank was insolvent and without money with which to pay plaintiff's claim or to represent any such deposit.

Fourteenth. The court erred in rendering judgment establishing plaintiff's claim as a general deposit secured by the depositors' guaranty fund, because the surrender by plaintiff of his unmatured interest-bearing time certificate of deposit for a credit upon the books of the bank as a general deposit having been made at a time when said bank was insolvent and for the purpose of charging the depositors' guaranty fund with payment therefor was a fraud upon the depositors' guaranty fund and void.

Fifteenth. The uncontroverted evidence having shown that on the 24th day of December, 1921, plaintiff surrendered an unmatured interest-bearing time certificate of deposit theretofore issued to him by the First Guaranty State Bank of Collinsville in consideration of its agreement to give him a cerdit therefor on its books as a general depositor, that at the time said agreement was made and certificate surrendered said bank was insolvent, and that plaintiff knew that it was in financial trouble, the court erred in rendering judgment establishing the plaintiff's claim as a general depositor secured by the depositors' guaranty fund, because, said bank being solvent, the contract converting the interest-bearing certificate of deposit into a general deposit was in contravention of Revised Statutes, art. 551, Complete Texas Statutes 1920, which prohibits an insolvent bank from preferring creditors, securing creditors, or doing any act with a view to prevent the application of its assets, in the manner prescribed by chapter 6. title 14, of Complete Texas Statutes of 1920.

Sixteenth. The court erred in rendering judgment establishing plaintiff's claim as a general deposit secured by the depositors' guaranty fund, because plaintiff's interest-bearing certificate of deposit and the giving to plaintiff credit therefor as a general depositor, secured and protected by the depositors' guaranty fund, was fraudulent and in violation of Revised Statutes, art. 551 which prohibits an insolvent bank from preferring creditors, securing creditors, or doing any act with a view to prevent the appropriation of its assets in a manner prescribed by chapter 6, title 14, Revised Statutes 1911.

The following facts were established:

Appellant the First Guaranty State Bank of Collinsville was located in Collinsville, Tex., and had been doing business for about 15 years at the date it was closed as a banking institution for liquidation by the commissioner of insurance and banking on the 27th day of December, 1921; that appellee was engaged in farming, and had resided at his present place of residence between 50 and 55 years, near the town of Collinsville, Grayson county, Tex.; that prior to being closed, said bank had been from its organization transacting and carrying on a banking business, during which time appellee had been one of its depositors; that on the 8th day of July, 1921, appellee deposited with appellant bank $6,000, for which, on said date, he received a deposit slip as follows:

"Certificate of Deposit—Not Subject to Check.

"The First Guaranty State Bank of Collinsville.

"$6,000.00.  Collinsville, Texas, July 8, 1921.

"L. P. Pilcher has deposited in this bank $6,000.00 payable to the order of himself on December 31, 1921, on return of this certificate properly indorsed. No. 647. Interest 4 per cent. per annum if left six months. No interest after maturity.

"[Signed]  J. B. Phillips, Assistant Cashier."

That appellee, L. P. Pilcher, had the right by his contract under which he made said time deposit to withdraw said sum of $6,000 so deposited at any time he might desire before the expiration of said six months, forfeiting, by doing so, all right to receive interest on said sum of $6,000, as he was only to receive interest in the event said amount was not called for and received by him prior to the expiration of six months from the date of said time deposit slip. On Saturday, December 24, 1921, during banking hours, appellee Pilcher had a transaction with said appellant bank through said bank's assistant cashier, Boyd Phillips, said bank then being

open and doing business, whereby appellee Pilcher surrendered the above time deposit slip and received in place thereof a deposit slip in the sum of $6,000 issued to him as a general depositor, as follows:

Deposited by L. P. Pilcher.

Collinsville, Texas, 12—24—1921.

Checks as follows:

C. D. No. 647....................................... $6,000 00

Duplicate by Phillips. A. C.

Total ...................................... $6,000 00

Appellee did not receive any interest on account of the time deposit slip from the 8th day of July, 1921, to the 24th day of December, 1921, having forfeited the right to receive interest by demanding payment of the $6,000 due him under said time deposit slip. On account of its insolvency, appellant bank was closed on the 27th day of December, 1921, by the commissioner of insurance and banking, and was never opened again for the transaction of banking business.

On the 20th day of March, 1922, appellee employed the law firm of Wood, Jones & Wood, of Sherman, Tex., to represent him in the matter of preparing and presenting proof of claim to the commissioner of insurance and banking and the banking board of his claim against said appellant bank as a general depositor, and on said date the following proof of claim was prepared by his attorneys:

"To the First Guaranty State Bank of Collinsville, Texas, Ed Hall, Commissioner of Insurance and Banking of the State of Texas, and J. S. Ferguson, Special Agent Appointed by the Commissioner of Insurance and Banking for the Purpose of Liquidating Said Bank: I hereby make demand of you for the sum of six thousand ($6,000.00) dollars which was deposited by me in said bank on the 24th day of December, 1921, being the proceeds of a certificate of deposit No. 647 due me by said bank and paid by me to said bank on said day and deposited to my credit as aforesaid."

Which proof was duly sworn to by appellee on the 20th day of March, 1922, and delivered on said date to J. S. Ferguson, special agent as above named, in person; which proof was afterwards received by the department of insurance and banking at Austin, Tex., March 22, 1922.

At the time appellee presented said proof of claim prepared by his attorneys to Mr. J. S. Ferguson, he, without any request from appellee, prepared another and different proof of claim as follows:

"Proof of Claim.

"State of Texas, County of Grayson: This proof of claim is not assignable and will not be paid or recognized by the commissioner of insurance and banking in the hands of any person other than the one who makes the proof of claim and all checks drawn in settlement of the same, or in payment of dividends thereon, will be drawn in the name of the claimant specified in the claim.

"Claim for Noninterest-Bearing and Unsecured Deposits.

"(1) The undersigned certifies that on the 27th day of December, A. D. 1921, —— was a depositor in the First Guaranty State Bank, Collinsville, Texas, that I had on deposit in said bank upon which no interest was being paid directly or indirectly by the said bank, its officers or stockholders; and that said deposit was in no manner secured either by collateral bonds, liens or otherwise; that all just and lawful offsets, payments and credits in favor of said bank have been allowed and deducted and there still remains due and unpaid —— dollars.

"General Creditor's Claim.

"(2) The undersigned hereby certifies that on the 27th day of December, 1921, the First Guaranty State Bank, Collinsville, Texas, was indebted to L. P. Pilcher in the sum of six thousand dollars which debt originated, and is evidenced and described as follows: Certificate of deposit issued 7/28/21 and due Dec. 31, 1921, and the evidence of said indebtedness is hereto attached and made a part hereof. Said debt is, or has been, secured as follows:

"That this money was placed with said bank under the following agreement as to interest: 4 per cent. if left for six months; that all just and lawful payments, credits and offsets have been allowed and said bank is still indebted to the said L. P. Pilcher in the sum of six thousand dollars.

"This claim is made and presented to the commissioner of insurance and banking in compliance with the laws of Texas.

"In testimony whereof witness the signature of the undersigned on this the 20th day of March, 1922.

his<br>"L. P. X Pilcher."<br>mark

Which proof of claim was duly sworn to by appellee before J. B. Cobler, a notary public, on the 20th day of March, 1922. Both of said proofs of claim were left with Mr. Ferguson by appellee.

On the 19th day of August, 1922, Mr. M. E. Gwynn, at that time connected with the department of insurance and banking, prepared a letter addressed to himself and had appellee to sign it by making his mark; said letter being as follows:

"Aug. 19, 1922.

"Mr. M. E. Gwynn, Collinsville, Texas—Dear Sir: On the morning of December 24th, 1921, I heard from my son that the above bank was in bad shape, and was very likely to fail, and as I had at that time $6,000.00 deposited in the bank on interest bearing certificate, I at once hurried to town and surrendered to the bank my certificate and had the amount placed to my credit on open account, knowing that open accounts which did not bear interest were protected by the guaranty fund and that interest bearing accounts or certificates were not so protected.

"This certificate was dated July 8th, 1921, was due Jany 8th, 1922, was for $6,000.00 and bore 4 per cent. semiannual interest.

"I forfeited the interest that had accrued, preferring to lose it than to take any chances with my money I had deposited.

"This whole amount had been in the bank for two years and I had been regularly drawing the interest on it every six months.

"I did not demand my money on the certificate at the time I had it changed to open account but merely placed it to my credit on open account and receiving a duplicate deposit ticket therefor.

"The bank never did open for business after Dec. 24th, 1921.

"I have filed claim for the above and I would, appreciate it if you would take up the matter of my claim with the department and find out just what is being done towards me getting my money at once.

"Yours truly,
                    his
              L. P. X Pilcher.
                   mark
"Witnesses: W. H. Voeckle, C. L. Simpson."

In reference to making the change in the form of his deposit, appellee testified:

"I went to the bank on the 24th day of December, 1921, and changed my deposit from an interest-bearing certificate to a general deposit; that was on Saturday. The reason I made the change to a general deposit was that I heard the bank was in bad shape. I had had some money in that bank ever since the bank had been there. My deposits during those years were not all interest-bearing deposits. For the last four years back I had had an account there. One of my sons told me the bank was in bad shape. He did not tell me where he got the information. He told me that between 9 and 10 o'clock on Saturday, December 24th. I suppose it was between 11 and 12 o'clock that I went to the bank and made the change. I went to the bank that morning when I first got to town, but I did not make the change because I did not want it right then. When I first went in the bank that morning, I did not change my account because they seemed to be pretty busy in there. They were doing business and I did not go in and talk to him about it. I reckon it was somewhere between 2 and 3 o'clock when I went back and changed my account."

Appellee further testified:

"I did not know whether the bank was going to close its doors at any time in the future or not. I did not draw the money out of the bank because I was not scared bad enough to draw it out if they had any in there. I had $1,000 of war savings stamps in there and $1,300 worth of Liberty bonds."

In reference to the certificate of proof prepared by Mr. Ferguson, appellee testified:

"When I gave Mr. Ferguson the certificate of proof of claim that Judge Wood had prepared, Mr. Ferguson prepared another one and gave it to me, and I went to Mr. Cobler's bank and signed it. I did not tell Mr. Ferguson to prepare for me the claim showing I was not entitled to be paid out of the guaranty fund. I showed him the paper prepared by Judge Wood. I have not made any claim to anybody that I should not be paid out of the guaranty fund; that is, I have not knowingly claimed that. The reason I signed the claim given to me by Mr. Ferguson was because he gave it to me. I do not remember that Mr. Ferguson read it to me, and I do not believe Mr. Cobler read it to me. * * * I did not read over the claim presented to me by Mr. Ferguson and sworn to before Mr. Cobler. I could not have read it. I thought this way: I thought I would have to sign it. He handed it to me and said the slip would be paid on this, and he said he would send them together. That was the understanding. The certificate was not attached to the proof of claim when I signed it. I thought he referred to a slip like the one I had given me December 24th. I would not have signed it had I known it made me just a common creditor with no right in the guaranty fund. I did not at any time intend to waive my right to the guaranty fund or on the guaranty fund."

In reference to signing the letter prepared by Mr. Gwynn, appellee testified as follows:

"The reason I signed the paper given me and the letter to Mr. Gwynn was because I didn't know any better. I thought that was what to do. I didn't know any better. Mr. Gwynn handed me the paper of August 19th, the letter, and wanted me to sign it. I suppose he just wrote that up there that day. He said he would write them a letter for me; that is what he told me. * * * I know I signed a letter written by Mr. Gwynn and witnessed by Mr. C. L. Simpson. I made my mark on it, and I guess the one you show me is the paper I signed. I don't think Mr. Gwynn read this one over to me, but he did read the first one he wrote. He said that was the same letter and he just tore up the first one and wrote another one. He said it was the same. I could not read it."

The evidence shows that appellant bank had been transacting its regular banking business, receiving money on deposit and paying checks, etc., up to the time it closed its business for the day on Saturday, December 24, 1921, and was to all appearances a solvent, going banking establishment. Appellee is a very ignorant man, not being able to read or write, and possessing little or no knowledge in reference to banking business; in fact, nothing further than to be able to make deposits and, with proper assistance, to draw money out on checks.

The evidence as a whole does not raise even a suspicion of fraudulent act or conduct on the part of appellee, and certainly no collusion in any respect with any one representing and acting for the bank in any of his transactions had with said bank. The only evidence which could be considered as throwing any suspicion on the conduct of appellee is the following, testified to by him:

"I remember having a conversation with Mr. Ferguson in which I told him that when I made the change in my account that I did not know the bank was insolvent. I afterwards saw Mr. Ferguson again and told him that I denied it at first and I wanted to apologize. He asked me if I had heard it, and I told him I had not, and I went back and acknowledged that I couldn't

carry it because he had asked me that. I just storied in that part of it, and I went back and acknowledged that it was too much. I wouldn't have told him that story if I had been in my right mind, I don't reckon."

In fact, the entire record fails to disclose that appellee even had the slightest opportunity of knowing whether or not the bank was insolvent. The record discloses that about three weeks before appellant bank was closed by the commissioner of insurance and banking, an expert accountant from said department had examined said bank, resulting in permitting same to continue in business, and, if an expert was unable three weeks before the failure of the bank to ascertain whether or not it was insolvent, surely it is not to be expected that one so ignorant as appellee is shown to be could possibly have known anything about the condition of said bank with reference to being solvent or insolvent. At the close of business on December 24, 1921, appellant bank had in its vault, and to its credit in other banks subject to its control, moneys aggregating $7,-808.65, being more than sufficient to pay appellee the sum of $6,000 due him on account of said time deposit; and, from the record, we are to assume that if payment had been demanded by appellee, appellant bank would have paid said sum instead of placing the amount to his credit as evidenced by the deposit slip issued to him December 24, 1921, for said sum of $6,000.

[1-3] Appellant's assignments of error Nos. 1, 2, and 3, as well as all propositions based thereon, are without merit; therefore, they are overruled. Kidder v. Hall (Tex. Sup.) 251 S. W. 497.

[4-6] The fourth and fifth assignments complain of the refusal of the trial court to sustain the general demurrer of appellant Chapman to appellee's petition, because said petition does not allege that appellee's claim was presented to the commissioner of insurance and banking within 90 days from the first publication of the notice required to be published under the Revised Statutes, art. 463, Complete Statutes of 1920; and the fifth assignment complains of the overruling of the general demurrer of said appellant to appellee's petition, because appellee failed to allege therein that his suit was filed within six months after the rejection of his claim by the commissioner of insurance and banking. On account of the identity of the questions presented by these assignments, it is not necessary to discuss them separately. Articles 463–465, Revised Civil Statutes, provide that holders of preferred claims must present same within 90 days after the first notice given by the commissioner of insurance and banking, and that suits on rejected claims must be brought within six months after rejection.

The above articles present questions of limitations which in our judgment are matters of defense and not necessary to be alleged affirmatively in appellee's petition in order to the right to maintain the suit. Statutes of repose, in order to be available, unless otherwise specifically directed by law creating them, must be urged as a matter of defense, either by general demurrer when the limitation appears on the face of the pleadings, and when not by appropriate pleas; otherwise, the benefits thereof must be considered as having been waived. However, conceding that said articles 463 and 465 should have been given the effect as contended for by appellants, yet it is our opinion that said articles present such matter as should have been brought to the attention of the trial court by special exceptions, and, in the absence of such special exceptions, the petition is sufficient to admit introduction of evidence to establish the cause of action as alleged. Rule 17 of the rules for district and county courts provides that general exceptions shall point out the particular instrument of the pleadings, to wit, the original petition or answer, or the respective supplements to either, and in passing upon said general exception every reasonable intendment arising upon the pleadings excepted to shall be indulged in favor of its sufficiency. Therefore it is our opinion that such matters as are reasonably encompassed within the offices of a special exception are not to be reached by general demurrer, for to do so would be a violation of the above rule, which we think was adopted for the purpose of securing a wholesome regard for the rights of litigants as expressed by their pleadings as a whole, and thus secure to them a full and fair hearing on the cause of action as alleged, where it is apparent from the entire pleading a legal right has been invaded or withheld.

[7] In the case of Paine et al. v. Hart-Parr Co. (Tex. Com. App.) 228 S. W. 121, suit was brought for breach of contract. The petition did not allege any time at which defendant agreed to pay the amount sued for, and the defendant's general demurrer was sustained by the Court of Civil Appeals. The Commission of Appeals, in reversing this holding of the Court of Civil Appeals, holds that we must indulge every reasonable presumption in favor of the sufficiency of the petition and treat everything alleged as admitted by the demurrer. Applying this rule to the instant case, it will be presumed that the claim was filed and the suit brought in due time.

[8] In Northwestern National Insurance Co. v. Woodward et al., 18 Tex. Civ. App. 496, 45 S. W. 185, it was held by the Court of Civil Appeals that a defective statement of the cause of action, if amendable, is good against a general demurrer. A writ of error was denied by the Supreme Court. Cer-

(256 S.W.)

tainly it cannot be contended with any degree of assurance that, if the trial court had sustained the general demurrer on both grounds complained of in the fourth and fifth assignments of error, appellee could not, and would not, have been accorded, under the rules of practice, the right to file an amended pleading so as to have removed the effect of sustaining said general demurrer. Therefore said assignments are overruled.

[9] Appellants, by their sixth assignment, complain because the court overruled the general demurrer of appellant Chapman for the reason that appellee's petition does not allege that his claim is not interest-bearing. This assignment is not sustained by the pleadings, but, to the contrary. We think the following substance of the allegations found in appellee's pleadings sufficient to comply with the requirement of the law in reference to alleging that the claim sought to be enforced as one secured by the depositors' guaranty fund was an unsecured and a noninterest-bearing demand:

"Appellee's petition alleges that on the 27th day of December, 1921, he had on deposit, to his credit, with the First Guaranty State Bank of Collinsville, the sum of $6,000, and that said deposit was made on the 24th day of December, 1921, and that from said time no interest was being paid directly or indirectly to appellee by the appellant bank, and no interest has been paid, or was ever paid on said deposit. Further, that from the time said deposit was made the same never was, and is not now, in any manner secured, either by collateral bonds, liens, or otherwise.

"Appellee alleges in his first supplemental petition that from July 8th to December 24th he had on deposit with the First Guaranty State Bank of Collinsville the sum of $6,000; that on the 24th day of December he changed said deposit from an interest-bearing deposit to a common, unsecured, noninterest-bearing deposit, subject to check."

We think that this is sufficient allegation that the claim was noninterest-bearing as against a general demurrer. This necessitates the overruling of said assignment.

[10] The seventh and eighth assignments challenge the ruling of the court in admitting in evidence the following testimony of M. E. Gwynn:

"I have seen the certificate issued by the commissioner of insurance and banking department relative to Collinsville bank as a bank under the guaranty fund. I mailed the certificate to Austin shortly after I took charge of the bank, and, as far as I know, it is now in the hands of the banking department. It shows that the First Guaranty State Bank of Collinsville was secured under the guaranty fund."

First, because such testimony was not the best evidence of the contents of said certificate; and, second, because same is verbal testimony as to the contents of a written instrument.

From the following allegations found in appellant's pleadings it is apparent therefrom that appellant assumed that the guaranty fund plan was adopted and in force by the appellant bank at the time said bank ceased to do business, to wit:

"Further answering herein, this defendant alleges that under the circumstances hereinbefore stated, the First Guaranty State Bank of Collinsville was wholly without authority to give plaintiff credit as a general depositor for the amount of his claim, and to thereby charge the guaranty fund with the payment thereof, and such contract, if any, is fraudulent and void, all of which he is ready to verify, and of this he puts himself upon the country.

"Defendant is informed that plaintiff will allege and assert that on or about December 24, 1921, that the funds described in plaintiff's petition ceased to be interest-bearing by reason of the change in the above-mentioned contract. This defendant denies that such change in said contract was ever consummated, and says that such funds were, and continued to be at all times, interest-bearing, but if mistaken as to there having been a change in the character of said deposit, and if it should be made to appear that said deposit was changed from an interest-bearing to a noninterest-bearing deposit, then defendant alleges that at the time plaintiff converted its deposit, bearing interest, into a deposit without interest, the Security State Bank & Trust Company, as was well known to plaintiff, had committed an act of insolvency and was then contemplating insolvency. Defendant says although plaintiff well knew that its deposit was not secured by the depositors' guaranty fund, and that, should said bank be declared insolvent, its deposit would be payable out of the assets of said bank other than the guaranty fund, it intended and sought, by its attempted conversion of its interest-bearing to noninterest-bearing deposit, to thereby charge and make liable said guaranty fund with its deposit; and that such conversion, if any, was made with a view to prevent the application of the assets of said bank in the manner prescribed by law, by charging the guaranty fund with liability on said deposit for which it was not liable, and of giving preference to plaintiff over other common creditors, and of defrauding the depositors' guaranty fund, and, therefore, is fraudulent and void."

Without objection appellee was permitted to testify that in the conversation he had with Mr. Ferguson, then a special agent of the banking department, and who was in charge of the bank, relative to his claim, Mr. Ferguson stated, "You are not getting anything out of that, out of the guaranty fund." Mr. Ferguson further testified that he told appellee at the time said claim was presented by appellee that, according to the banking laws, appellee's claim would not be protected by the guaranty fund and appellee would be classed as a general creditor because the time certificate was not due at the time appellee transferred it to his checking account. Said witness further testified:

"As far as the guaranty fund was concerned, I refused to accept the claim under the directions of the department of insurance and banking."

The objections made to the introduction of said testimony prima facie should have been sustained. However, appellants, by the above allegations, admitted in effect the existence of the facts sought to be proved by said evidence, to wit, that a certificate had been issued by the commissioner of insurance and banking to appellant bank showing that the general depositors of said bank were secured under the guaranty fund, and at the time 'of the transactions in question was operating under the depositors' guaranty fund plan; and, in effect, the testimony above referred to by the witness Ferguson, which was admitted without objection, tended to establish such facts. We conclude that the admission of said testimony of said Ferguson, under rule 62a for the Court of Civil Appeals, was harmless error, and, therefore, will not justify a reversal of said cause, said evidence and pleadings of appellants leaving no doubt, without reference to the evidence objected to, that appellant bank was operating under the guaranty fund plan, and the admission of the testimony so objected to could not be prejudicial to the rights' of appellants, as same did not amount to such a denial of the rights of the appellants as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case. Said assignments are therefore overruled.

[11] By the ninth assignment appellants challenge the judgment because same bears interest at the rate of 6 per cent. per annum on appellee's claim from April 1, 1922, to date of judgment, on the ground that the evidence shows that appellant bank was closed December 27, 1921, and that it was then, and is now, insolvent, asserting that the rule of law that interest shall not run on a claim against an insolvent corporation should have been applied and followed in rendering the judgment against appellants. The depositors' guaranty fund is in the nature of a trust fund, maintained by various member banks and managed by the state banking board as trustees. Its only object is to guarantee unsecured and noninterest-bearing depositors, and stands in the position of a surety. Therefore, in our opinion, the above rule of law, as contended for by appellants, does not apply for the reason that the interest adjudged in favor of appellee would not have the effect to decrease the general assets of the insolvent appellant bank, but creates an additional demand against the depositors' guaranty fund under the control and management of the state banking board. The act of said board in refusing to allow appellee's claim as one secured by said guaranty fund gave rise to the right of appellee to have in-

terest allowed on his claim from the date of said refusal, to wit, April 21, 1922. The following authorities clearly show that the application of the rule of law in reference to allowing interest as contended for by appellants is not applicable to the case at bar; said authorities clearly indicating the distinction to be observed in the application of said rule from that class of cases where to allow the interest decreases the general assets 'of an insolvent corporation and where it is only to add an additional burden to a surety or one occupying the position of a surety for an obligation involving the payment of a sum of money.

National Surety Co. v. Leflore County (C. C. A.) 262 Fed. 325, 18 A. L. R. 273, by which the following rule is announced:

"If the surety failed to pay the amount of the liability when it was incurred, the utmost for which it could be held liable for its own delay, as distinguished from that of its principal, the depository, would be interest at the legal rate from the date the liability was incurred * * * until the rendition of the decree, upon an amount not in excess of the bond."

Talley et al. v. State, 121 Ark. 4, 180 S. W. 330, from which we quote as follows as illustrating very clearly the distinction:

"Where a county depository became insolvent," and the county sued the sureties on the bank's bond "to recover its loss through insolvency," the sureties "are liable for interest from the time of the bank's failure to the time of judgment, though interest does not run on a liability against an insolvent corporation while in the hands of a receiver, since the county's right of action against them became complete when demand was made upon the bank for payment" of funds or their "equivalent when the bank failed."

This leads to the overruling of said assignment.

[12] We have carefully considered tenth and eleventh assignments and have reached the conclusion that same are without merit; therefore, each is respectively overruled.

Twelfth, thirteenth, fourteenth, fifteenth, and sixteenth assignments, presenting in the main the same question, viz., whether under the above facts appellee, by forfeiting his interest and changing the time deposit to a noninterest-bearing checking deposit and receiving a deposit slip from appellant bank, became a creditor secured by the depositors' guaranty fund under the laws of Texas, therefore, will be considered together.

[13] It must be borne in mind that at the time appellee received his' time deposit certificate on the 8th day of July, 1921, he parted with the $6,000 under a contract securing to him the right to terminate at any time the loan character of said transaction, to wit, to waive interest and demand payment of his money at any time before the expiration of

the six months for which said time certificate was issued, and it was by force of this right secured to him by his contractual relationship with appellant bank, and not by any subsequent agreement or understanding with said bank, that appellee, on the 24th day of December, 1921, elected to terminate the right of appellant bank to further retain the use of said $6,000 under said time certificate of deposit. It is true that appellee had heard that the bank was in financial trouble, the extent of which was not known to him; and that he did not demand the payment of the money, but was content to receive a deposit slip showing that the amount had been placed to his credit as a general deposit. Prior to and at the time of this transaction, appellant bank was a going concern, had been receiving money on deposit and paying out money on different forms of checks therefor, and had on deposit and subject to its control funds to its credit with other banks amounting to $7,808.65; and, in view of the fact that the evidence clearly establishes that appellant bank had at the closing of its business on the 24th of December, 1921, met all demands for the payment of money made upon it, therefore it is to be presumed that if appellee had demanded payment of the money, same would have been made. Such payment, in our judgment, would not have been in violation of any of the provisions of chapter 6, title 14, Revised Statutes 1911, relating to state banks and banking, either on the ground of being a preference or the doing of an act with the view to prevent the appropriation of the assets of appellant bank in the manner prescribed by said chapter 6, title 14, Id.

Further, we are of the opinion that under all the facts surrounding the transaction between appellee and appellant bank involving the surrender of said time deposit certificate and the issuance of said certificate as a general deposit, appellee became a general depositor, entitled to the full protection of the bank depositors' guaranty fund, in that he did, in effect, deliver to appellant bank the sum of $6,000 subject to his order, by virtue of which transaction the title to said sum of money passed to appellant bank; and, in order to accomplish this result, it was not necessary under the facts surrounding said transaction that the money should have been counted out and delivered to appellee before the issuance to him of said certificate of general deposit, as said transaction evidences a bona fide deposit as having been made by appellee; for which said certificate of date December 24, 1921, was issued to him. Appellant bank had funds available with which said time certificate of deposit could have been paid when same was terminated if payment had been demanded, and, assuming that payment was demanded, and that the funds so available

were used by appellant bank to the extent of placing $6,000 of said available funds in the possession of appellee and same was immediately placed on deposit to appellee's credit with appellant bank, certainly it could not be contended that appellee, by such transaction, would not have become a general depositor secured by the depositors' guaranty fund under which appellant bank was operating. Kidder v. Hall, supra; Revised Statutes, arts. 486, 551.

In our opinion article 551 is not applicable for the reason that the transaction did not constitute a preference of one creditor over another. The weight of authority on this question is to the effect that an inhibited preference is one which lessens the amount of the insolvent estate subject to the payment of claims of general creditors. In other words, it must be shown that the debtor has received for his sole benefit some assets of the bank which, but for said transfer, would have been distributed among all the creditors. New York County National Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380; McDonald v. Clearwater Short Line Ry. Co. (C. C.) 164 Fed. 1007; Wright v. Gansevoort Bank et al., 52 Misc. Rep. 214, 103 N. Y. Supp. 47.

In Wright v. Bank, supra, it is laid down as accepted test of a preference under the bankrupt act that—

"Under the authorities it is quite apparent, however, that a preference is dependent, not upon the position of the favored creditor alone, but upon his position as compared with that of the other creditors. In other words, the test is, not whether the favored creditor has received any advantage, but whether the general creditors have been put at a disadvantage by a payment which reduces or exhausts a fund to which they must look for their payment."

From the above authorities it must be apparent that said transaction of December 24, 1921, between appellee and appellant bank could not have been a preference under article 551, for, if said transfer had not been made, appellee would have shared in the bank's assets to the extent of $6,000 in common with other creditors and received his proportionate share thereof; while, if the transfer is allowed to stand and appellee is paid in full out of the depositors' guaranty fund, then said fund shares to the extent of $6,000 in the proceeds realized from the assets of appellant bank in lieu of appellee. So, in no event can it be demonstrated from the evidence that by allowing appellee's claim to be paid in full out of the depositors' guaranty fund, that thereby a preference will in any respect be created; no rights of any of the creditors being thereby in any respect impaired or interfered with by reason of this change in the status of the deposits and payments being made thereunder and in accordance therewith.

We therefore conclude that said assignments are not well taken and same are overruled. This necessarily leads to an affirmance of the judgment.

Affirmed.

JONES, C. J., having been of counsel for appellee, took no part in the disposition of this case.

On Appellant's Motion for Additional Findings of Fact.

VAUGHAN, J. The First Guaranty State Bank of Collinsville was insolvent on the 24th day of December, 1921, and had been continuously so insolvent from the 8th day of July, 1921. On the 24th day of December, 1921, said bank contemplated insolvency; The capital stock of said bank had been seriously depleted on the 24th day of December, 1921, as will be shown by the testimony in reference thereto hereinafter quoted.

The legal reserve required to be maintained under the law by said bank had, on December 24, 1921, been seriously depleted, as will be shown by the statement of facts in reference thereto hereinafter quoted:

At the time appellee surrendered his interest-bearing certificate of deposit to said bank and received from said bank a certificate of deposit as a general depositor, said bank had in actual cash in its vault at its place of business in Collinsville, Tex., $387.97, cash items $637.05, convertible into cash so as to aggregate cash and cash items in its said vault equal to $587.97, and had in the vaults of other banks at said time cash to its credit due by said banks $7,229.68, which amount was subject to and available to its checks; that appellee had no knowledge of the actual condition of said bank, either at the time when he received his interest-bearing time certificate and surrendered same and received the certificate of deposit as a general depositor on the 24th day of December, 1921, further than the information that had been conveyed to him by his son as set forth in the original opinion.

The First Guaranty State Bank of Collinsville was closed by the state banking department on the 27th day of December, 1921, and was never opened again for the transaction of banking business. Soon after being so closed an audit was made of the books of said bank, and it was found that the paper assets of said bank on December 24, 1921, amounted to $199,525.02; that at that time $44,924.79 was shortage, carried as expense and suspense account, the actual assets of the bank being $154,600.23. The liabilities of the bank on December 24, 1921, taking out the liability on account of the capital stock and surplus, which totaled $33,000, amounted to $166,526.02.