**LLOYDS AMERICA et al. v. EL PASO–
HUDSPETH COUNTIES ROAD DIST.
OF TEXAS.**

No. 3551.

Court of Civil Appeals of Texas. El Paso.
June 17, 1937.

Rehearing Denied July 15, 1937.

Lewright & Lewright, of San Antonio, for plaintiffs in error.

C. W. Croom, of El Paso, for defendants in error.

NEALON, Chief Justice.

Suit was instituted by defendant in error, a quasi-municipal corporation, against Lloyds America, an association of insurance underwriters, to recover interest at the rate of 6% per annum on $200,000 from September 4, 1931 to May 24, 1932. The case was tried by the court without the intervention of a jury. Judgment was rendered in favor of plaintiff and against defendants in the sum of $8,400.58, with interest from the date of said judgment at the rate of 6% per annum, and it was decreed that the judgment should be binding against the Underwriters of the defendant Lloyds America as their several liabilities appear in the articles of agreement of said Lloyds America. The parties will be referred to as they were related to the litigation in the district court. The controversy arose out of alleged liability upon eight bonds for $25,000 each, executed by the First National Bank of El Paso, Texas, as principal, and defendants, as surety. To the judgment so rendered defendants excepted and have sued out their writ of error to this court that said judgment may be reviewed. From the agreed statement of facts, the following appear to be the controlling facts:

Prior to May 21, 1931 First National Bank of El Paso, Texas, a national banking corporation, had been in due form and manner, and as required by law, selected by plaintiff as a depository for all moneys and funds belonging to and under the control of plaintiff. On May 21, 1931, said bank, as principal, and defendant, as surety, acting by Elliott Jones, who was at all the times involved in this controversy the attorney in fact for defendant, executed and delivered to plaintiff eight bonds, each in the penal sum of $25,000, each dated May 21, 1931, and all being identical in language. The provisions of said bonds necessary to an understanding of the issues herein involved, after reciting that the First National Bank was principal and Lloyds America was surety, read as follows:

"Whereas, the said Principal has been designated as a depository for the El Paso-Hudspeth Counties Road District of Texas,

"Now, therefore, the condition of this obligation is such, that if the principal shall, during the term commencing at nine o'clock A. M., on the 31st day of May, 1931, and ending with the close of banking hours on the 30th day of May, 1932, faithfully account for and pay over on legal demand (made during the term aforesaid) all mon-

eys deposited with said principal by or on behalf of the said obligee, then this obligation to be null and void, otherwise to remain in full force and virtue in law.

"Provided, however, that upon the following further express condition:

"First: That in the event of any default on the part of the principal, written notice thereof, with a verified statement of the facts showing such default and the date thereof shall within ten (10) days after such default, be delivered to the surety at its office in San Antonio, Texas.

"Second: The surety shall not be liable for a greater proportion of the amount on deposit at the time of default hereunder, after deducting therefrom the value of all collateral delivered to or for the use of the obligee to secure such deposit, than the amount of this bond bears to the aggregate penalties of all personal and corporate surety bonds (whether collectible or not) held by the obligee at the time of such default and liable under their terms therefor.

"Third: That in no event shall the surety be liable hereunder for any sum in excess of the penalty of this bond.

"Fourth: That in the event of liability hereunder the surety shall be subrogated to all the rights of the obligee against any other person or corporation, as respects the default on the part of the principal, to such proportion of the obligee's claim against said principal as the amount of the surety's liability shall bear to the obligee's deposit at time of default; and the obligee shall execute all papers required and shall cooperate with the surety to secure the surety such rights.

"Fifth: That no suit, action or proceeding shall be brought or instituted against the surety upon or by reason of any default of the principal until after the expiration of sixty (60) days after such default, nor in any event after the expiration of six (6) months after such default."

All of said bonds were in full force and effect on September 4, 1931, on which date said First National Bank of El Paso, Texas, being insolvent, closed its doors, quit doing business and defaulted, and thereafter remained in default in the matter of payment to plaintiff of funds which plaintiff then had on deposit with said bank, and continuously thereafter failed, refused and neglected to pay any money then on deposit with said bank to the credit of and belonging to plaintiff, all in violation of the conditions of said eight bonds. As required by each of said eight surety bonds, plaintiff in due time, form and manner gave written notice to defendant of the default of said bank, with a verified statement of facts showing default and the date thereof. The amount on deposit to plaintiff's credit on September 4, 1931 was $221,730.09. In due time and in due form as required by the receiver of said bank, plaintiff presented its claim to said receiver. The claim was approved and accepted by the receiver.

Prior to May 24, 1932, plaintiff instituted suit in the United States District Court for the Western District of Texas, El Paso Division, as plaintiff, against the receiver of said bank as defendant, and Lloyds America as intervener, said cause being No. 257 on the Equity side of the docket of said United States Court. On May 24, 1932 said court entered a judgment and decree in favor of plaintiff and against said receiver and said intervener for the balance remaining due on plaintiff's debt in the sum of $155,211.63, with interest from date of judgment at the rate of 6% per annum until paid. Said receiver had theretofore, in March, 1932, reduced said original liability by a payment of $66,519.03.

Contemporaneously with the execution of these bonds, the principal bank, to indemnify the defendant on account of its liability on said bonds, pledged Two Hundred Thousand Dollars of Liberty Bonds and Treasury Bonds or Certificates. The pledge was evidenced by a written instrument. Under the terms of the pledge, said securities were deposited in a Safety Box in said First National Bank; a key to said box was to be delivered to Elliott Jones, as attorney-in-fact for the Underwriters at Lloyds America, and the bonds were to be held until all liability of defendant under the surety bonds aforesaid was terminated, or the said bonds had been withdrawn to liquidate any such liability. Under the further terms of the pledge, the bonds could only be withdrawn in the presence of a representative of the First National Bank of El Paso, Texas.

In its bill of complaint in said equity cause No. 257, in the United States District Court, plaintiff alleged that in order to secure plaintiff, said Liberty and Treasury bonds were deposited under a written contract between said bank and Lloyds America; that said complainant knew of said pledging, and except for the making of said pledge would not have accepted the eight surety bonds executed by Lloyds America. It alleged

that the pledge of the bonds inured to its benefit, and that it had a lien thereon; that it had been induced by said pledge to keep on deposit large sums of money until said bank became insolvent and quit business on September 4, 1931; that the receiver refused to recognize the validity of the pledge; that the bonds were worth $200,000. It prayed for foreclosure of its alleged liens on said Liberty and Treasury bonds, and it prayed judgment against defendant (plaintiff in error herein) on the eight indemnity bonds. The facts were as thus alleged in said equity cause.

By supplemental bill in said equity cause, complainant (defendant in error) gave the receiver credit for $66,519.03, which had been paid in March, thus leaving a balance of $155,211.06. Defendant (plaintiff in error herein) intervened in said equity cause and adopted the allegations of plaintiff's pleading therein, and alleged that the bonds executed by defendant (plaintiff in error) were such as are required by law to enable said bank to qualify as depository of plaintiff, and that said Liberty and Treasury bonds were deposited to secure both defendants (plaintiffs in error herein), and complainant (defendant in error herein) in the payment of all sums deposited by said complainant with said bank, and that Lloyds America had a lien on said Liberty and Treasury bonds, which they prayed said United States District Court to foreclose for the benefit of themselves and associates.

The judgment of said United States Court foreclosed a lien on said Liberty and Treasury bonds. The receiver perfected his appeal to the United States Circuit Court of Appeals, for the Fifth Circuit. Pottorff v. El Paso-Hudspeth Counties Road Dist., 62 F.(2d) 498. That Court affirmed the judgment of the District Court. The United States Supreme Court denied petition for writ of certiorari. Pottorff v. Underwriters at Lloyds, 289 U.S. 724, 53 S.Ct. 522, 77 L. Ed. 1474. In April, 1933, the receiver paid plaintiff the amount due on said judgment as of May 24, 1933.

At the time said Liberty and Treasury bonds were deposited they were the property of said bank. From the inception of the litigation aforesaid until the United States Supreme Court declined to take jurisdiction, the receiver refused to surrender the bonds, and contended that they were part of the general assets of the bank, and that the pledge aforesaid was invalid.

The parties agreed that: "On September 4, 1931, said United States Liberty and Treasury Bonds so pledged and deposited in said box by said bank were worth on the open market in El Paso, Texas, $104.27 for every $100.00 of the par or face value of such bonds; said pledged and deposited Liberty Bonds on November 4, 1931, were worth on the open market in El Paso, Texas, $101.14 for every $100.00 of the par or face value of said bonds; on September 4, 1931, the United States Treasury Bonds or certificates which were so deposited and pledged by said bank in May, 1931, were worth on the open market in El Paso, Texas, $101.03/32 for every $100.00 of the par or face value of such Treasury Bonds or certificates, and on November 4, 1931, the reasonable market value in El Paso, Texas, of said United States Treasury Bonds or certificates was $93.28 for every $100.00 of the par or face value of such Treasury Bonds or certificates."

Defendant's representative, a few days after the bank went into the hands of said receiver, made demand that he be permitted, as representing defendant, to withdraw said bonds from said safety deposit box for the purpose of selling same in the open market at El Paso at their then reasonable current value; but the receiver refused to permit him to take physical possession of said securities or to go into or open the safety deposit box and withdraw the same, though the written agreement entered into between the bank and defendant provided that defendant, in the event it became liable for any amount under the terms and provisions of said indemnity bonds, should have the right to withdraw from said safety deposit box a sufficient quantity of bonds that at the then market price of same at El Paso would "repay, make good and satisfy such liability."

The agreed statement of facts contains the following:

"8th: At and prior to the time said judgment was entered in said cause in said United States District Court at El Paso, plaintiff herein was contending as regards defendants in this cause that said defendants herein were bound, liable and obligated to said plaintiff herein for interest on said eight bonds above mentioned in the sum of Two Hundred Thousand Dollars ($200,000.-00) at the rate of six per cent. (6%) per annum from September 4, 1931. At and prior to the time when said judgment in

said United States District Court was so entered therein, it was agreed between plaintiff herein and defendants herein that it was to the interest of said plaintiff and also of said defendants herein that the question of interest be withdrawn from said suit in the Federal Court and postponed for final decision when said Federal suit should be finally terminated; and, pursuant to said understanding, and in order to advance the interests of plaintiff and defendants herein in said suit in said United States District Court a written agreement was entered into." Portions of said agreement read as follows:

"It is expressly understood and agreed, however, that the rights of the parties as regards their position relative to said interest be and the same is hereby reserved in full, and after final determination of the issues of this suit each of the parties hereto shall have reserved to it any and all rights that it may have enjoyed and now possesses prior to the entry of final decree herein.

"In consideration of the above plaintiff agrees that it will not contend in this case at this time for said interest to date of judgment, and will forego the same until the final determination of this suit; and in the event the parties hereto are then unable to agree as to the liability of the interveners for interest, if any due the plaintiff, then in that event the same may be disposed of by litigation in the proper court for that purpose, just as if said issue was presented and decided at the time the decree is entered in this case."

This suit followed the inability of the parties to agree upon the question of interest.

## Opinion.

Briefly stated, the contentions of plaintiffs in error are:

1. That plaintiff below was not entitled to recover interest eo nomine for any time prior to May 24, 1932, when judgment was entered in case No. 257 in equity in the United States District Court of the El Paso Division of the Western District of Texas.

2. That the stipulation to withdraw the question of interest from the controversy in said equity cause was void because, (a) it was against public policy; (b, c) was without consideration, and none was pleaded.

3. Because if plaintiff was entitled to recover interest, the amount upon which interest should have been calculated was the difference between the amount of the plaintiff's bank deposit September 4, 1931, and the El Paso market value of the Liberty Bonds and Treasury Certificates as of that date.

4. That plaintiff's claim as to interest was adjudicated adversely to plaintiff in said federal equity suit.

Upon findings of fact made without request, but conforming in almost all particulars to those we have made, the trial court filed the following conclusions of law with which, with one exception hereinafter noticed, we agree, and which we adopt as our own:

"Plaintiff herein, under the facts as found, was on the date of the entry of the decree in the Federal Court, entitled, as damages, to interest at the rate of six per cent. per annum on Two Hundred Thousand Dollars up and until the payment of the dividend, and to interest at the rate of six per cent. per annum on the balance remaining after the dividend was deducted, up to the date of the judgment.

"The liability of the principal on the bond as to interest is the same as if there had been a conversion. The ordinary measure of damages for conversion is the value of the property of the date of the conversion, with six per cent. interest from said date. Farmers' State Bank v. Brazoria County (Tex.Civ.App.) 275 S.W. 1103, 1105, writ of error denied, Smith v. Brazoria County, 115 Tex. 148, 278 S.W. 177; Commercial Bank v. Jones, 18 Tex. 811; Talley v. State, 121 Ark. 4, 180 S.W. 330.

"Paragraph numbered second in the surety bonds does not limit the amount of the liability of the defendant herein, but has relation to co-insurance.

"Paragraph number five of said Depository Bond, does not postpone the liability for interest for sixty days. Especially is this true where payment was not made within the sixty days. The fact that through the attitude of the Receiver, defendant was precluded from applying the value of the Liberty Bonds on its liability on the Depository Bond, does not suspend its liability for interest.

"Unless the contract made by the parties plaintiff herein and defendant herein, acting through their attorneys of record, prior to the entry of the decree in the Federal Court, violates public policy, same should be enforced. The true intent and meaning of said contract is and was, that the issue as to

whether plaintiff herein, as to defendant herein, was entitled to interest prior to the date of the Federal decree, be undetermined thereby. The consideration is ample to support the contract. Plaintiff agreed to contend no further for interest in the then pending litigation. It neither excepted to the judgment nor appealed therefrom. While by implication the Federal decree denies the recovery of interest prior to the date thereof, it makes no express adjudication thereon. Public policy does not preclude the enforcement of the contract discussed." Allen v. Frank (Tex.Civ.App.) 252 S.W. 347; Short v. Blair & Hughes Co. (Tex.Civ.App.) 230 S.W. 427.

The exception to which we refer is that "by implication the Federal decree denies the recovery of interest" prior to its entry. If such an effect is implied, it is not due to a ruling upon the merits of the claim for interest, especially as damages, against plaintiff in error. The federal court was concerned with the effect of its judgment upon the funds in the hands of the receiver, and more especially with the validity of the pledge as affecting the distribution of those funds; and we must assume that its decree was entered with reference to the general rule laid down by the Supreme Court of the United States, according to which interest is not allowed on claims against the funds of an insolvent when they are in the hands of a receiver or an assignee in insolvency, where the assets are insufficient to pay both principal and interest. This is not a judgment that interest does not run against the debtor, for the contrary is true; but for convenience or for a more equitable distribution of the assets, interest may be disallowed under the circumstances indicated. 23 R.C.L. 104, 105; American Iron, etc., Mfg. Co. v. Seaboard Air Line Ry., 233 U.S. 261, 34 S.Ct. 502, 58 L.Ed. 949.

The contention that the insolvent bank and its receiver were necessary parties is without merit.

Much of what is said about the right to recover interest eo nomine is beside the point. The petition alleged the facts. The liability of the plaintiff in error attached when the bank's default took place. The penal sum of the bond became due. 2 Sutherland on Damages (3d Ed.) § 470. Plaintiff in error might then have paid the amount due from the bank and have been subrogated to the claim of defendant in

error against the receiver. It did not do so. Consequently it was in default from the day the bank closed its doors. This default was not produced by the law; it was voluntary upon the part of plaintiff in error. Defendant in error was damaged. Our Supreme Court has stated the rule, in Commercial Bank v. Jones, supra: "But in a suit for the conversion of money, if damages are allowed at all, it must be in the form of interest. On principle the plaintiff is entitled to his damages as well for the tortious conversion of money as property; and as legal interest is the only rule by which to measure the damages, it is not perceived that there can be error in instructing the jury to allow interest."

This rule was adhered to in Farmers' State Bank v. Brazoria County (writ refused), supra, where it is said: "Here there was no compensation fixed by the parties for the conversion of the county's money by the appellant bank, which its appropriation of the same to its own use and benefit amounted to; hence the general rule for damages in conversion (that is, the value at that time and place of the property converted, together with legal interest thereon from the date of the conversion) would apply. San Antonio Railway Co. v. Smith (Tex.Civ.App.) 171 S.W. 282; Hancock v. Haile (Tex.Civ.App.) 171 S.W. 1053; Blakeney v. Johnson County (Tex.Civ.App.) 253 S.W. 333."

That the trial court was correct in its conclusion that the stipulation to withdraw the controversy as to interest from the consideration of the federal court for the purpose of determining it by agreement or in another trial cannot be questioned seriously. A defendant may waive the rule prohibiting the splitting of causes of action —it being a rule for the benefit of the defendant. 1 Ruling Case Law, p. 342; Allen v. Frank, supra; Short v. Blair & Hughes Co., supra.

We find no error in the action of the trial court either in requiring plaintiff in error to bear the consequences of its default upon the bond or in requiring it to abide by the stipulation with respect to withdrawing the question of interest from the federal court controversy—if, indeed, it was ever present in that case as presented in the issue here involved.

Defendant in error's cross-assignment is overruled.

Judgment is affirmed.